IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Four Seasons Logging, LLC,       :
                     Petitioner     :
                                        :
          v.                  :    No. 347 C.D. 2022
                                        :    Submitted: February 24, 2023
Department of Labor and Industry,    :
Office of Unemployment                :
Compensation Tax Services,          :
                     Respondent    :

BEFORE:    HONORABLE ELLEN CEISLER, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE DUMAS                                    FILED: January 5, 2024

Four Seasons Logging, LLC (Four Seasons) petitions for review of the order entered by the Department of Labor and Industry (Department), which (1) denied Four Seasons' petition for reassessment and (2) affirmed the notice of assessment issued by the Office of Unemployment Compensation Tax Services (Tax Services). Four Seasons essentially challenges the sufficiency and weight of evidence supporting the Department's reasoning that under the Unemployment Compensation Law (Law),[1] Four Seasons owed unemployment compensation taxes that were not paid by Four Seasons Forestry Services, LLC (Forestry). We are constrained to affirm.

## I. BACKGROUND[2]

We briefly summarize the background set forth by Tax Services in its

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751-919.10.

[2] Generally, when we state the facts, we view the record in the light most favorable to the prevailing party, including the benefit of all logical and reasonable inferences, unless we determine

decision. *See generally* Final Decision & Order of the Dep't of Lab. & Indus. (Op.), 3/15/22. Edwin Knecht was a majority owner of Forestry, a logging business. *Id.* at 3, 5. Tammy Knecht (Edwin's spouse) was Forestry's secretary shortly before Forestry ceased operations. *Id.* at 4. Forestry failed to pay its unemployment compensation taxes, and the Department unsuccessfully attempted to collect. *Id.* at 5.

Similar to Forestry, Four Seasons is also a logging business that was founded in March 2017. *Id.* at 5-6. A few months later, Four Seasons purchased some of Forestry's equipment, Pet'r's Ex. 7, and hired the Knechts. Four Seasons eventually terminated Edwin Knecht's employment. The Department's opinion exhaustively details the transactions involving Four Seasons, Forestry, and the Knechts. *See* Op. at 3-19.

Subsequently, a Department tax agent suggested that Four Seasons may be a successor-in-interest to Forestry, which prompted a Department investigation. *Id.* at 20. The Department concluded that Four Seasons is a successor-in-interest to Forestry and assessed Four Seasons approximately $175,000, including interest and penalties. *Id.* at 21.[3] Four Seasons timely filed a petition for reassessment, and the

that material findings of fact are unsupported by substantial evidence of record. *Stage Road Poultry Catchers v. Dep't of Lab. & Indus., Off. of Unemployment Comp., Tax Servs.*, 34 A.3d 876, 885-86 (Pa. Cmwlth. 2011) (*Stage Rd.*).

The Department made numerous findings of fact resting on its disbelief of uncontradicted testimony and documents, *i.e.*, negative findings. *See Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 486 (Pa. 2002). Nevertheless, we may not review an agency's decision "in such a manner as would intrude upon the agency's fact-finding role and discretionary decision-making authority." *Id.* at 487-88. Further, we are limited to the issues raised by Four Seasons' counsel. *Gibraltar Rock, Inc. v. Dep't of Env't Prot.*, 286 A.3d 713, 724-25 (Pa. 2022) (cautioning this Court from raising issues *sua sponte*).

[3] The notice of assessment stated that the Department was authorized to assess Forestry under Section 304 of the Law, 43 P.S. § 784. Dep't's Ex. 6, at 1. Section 304, in turn, is within Article III of the Law, 43 P.S. §§ 781-795, which governs employer contributions, including, as needed, an employer's successor-in-interest. Section 301 of the Law, 43 P.S. § 781.

Department held a hearing.

At the beginning of the hearing, the parties stipulated that the only issue was whether Four Seasons was a "mere continuation" of Forestry. *Id.* at 2. They also stipulated that although Four Seasons purchased equipment from Forestry, that purchase was not the basis of the notice of assessment. *Id.* At the hearing, the parties presented witnesses and evidence, following which the Department denied relief. *Id.*

The Department reasoned that a *de facto* merger occurred when Four Seasons acquired Forestry. *Id.* at 28-45 (discussing the four factors identified in *Fizzano Bros. Concrete Prods., Inc. v. XLN, Inc.*, 42 A.3d 951, 962 (Pa. 2012) (*Fizzano*), for determining the existence of a *de facto* merger).[4] In the Department's view, there was "overwhelming indication" that Forestry and Four Seasons executed a *de facto* merger as opposed to a sale of assets. *Id.* at 46. Per the Department, Four Seasons was indistinguishable from Forestry, as the Knechts managed and controlled both entities. *Id.* at 46-47.[5] No post-trial motion was required, and Four Seasons

_____

[4] For context, we briefly state the four *de facto* factors as presented in the Department's opinion. First, "a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible." *Fizzano*, 42 A.3d at 962 (citation omitted). Second, an "assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor." *Id.* Third, "a continuity of management, personnel, physical location, aspects, and general business operation." *Id.* Fourth, "continuity of ownership." *Id.*

[5] The Department's opinion did not discuss its statutory authority under the Law. Specifically, the Department did not address its legal basis for resolving successor liability for unpaid unemployment compensation tax, including under which prong of Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B), that Four Seasons was liable for Forestry's unpaid taxes. *See* Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B) (discussed below). The Department also did not address 15 Pa.C.S. § 1904, which abolished the doctrine of *de facto* mergers. 15 Pa.C.S. § 1904 (1989) ("The doctrine of *de facto* mergers, consolidations and other fundamental transactions is abolished . . . . A transaction that in form satisfies the requirements of this subpart may be challenged by reason of its substance only to the extent permitted by section 1105 . . . ."); *id.* § 1904 (2015) (reflecting non-substantive revision). *But see Smith v. A.O. Smith Corp.*, 270 A.3d 1185,

timely appealed.

## II. ISSUES

Four Seasons contends that it was not a "mere continuation" of Forestry, *i.e.*, there was no *de facto* merger. Four Seasons' Br. at 4.

## III. DISCUSSION[6]

In support, Four Seasons generally contends that the Department, in concluding that a *de facto* merger occurred under *Fizzano*, "made several findings of fact and conclusions of law [that] were wholly unsupported by the" record. *Id.* at 8. Four Seasons contends that the record did not establish any continuity of

1192 n.6 (Pa. Super. 2022) (claiming that "no Pennsylvania state court has ever interpreted [Section 1904], let alone found that the statute abolishes the *de facto* merger or mere continuation exceptions to the general rule against successor liability"). Finally, the Department did not address 34 Pa. Code § 63.1a, which provides that evidence of "common ownership, control, management or a combination thereof that exists at the time of the transfer of organization, trade, business or workforce *will be disregarded*" by the Department "if it commences immediately before the transfer and during a series of nearly contemporaneous business transactions culminating in the transfer." 34 Pa. Code § 63.1a (emphasis added).

It is well settled, however, that this Court is "neither obliged, nor even particularly equipped, to develop an argument for a party. To do so places the Court in the conflicting roles of advocate and neutral arbiter." *Martinez v. City of Reading Police Dep't*, 289 A.3d 1136, 1139 n.13 (Pa. Cmwlth. 2023) (cleaned up); *accord Gibraltar Rock*, 286 A.3d at 724 (reiterating that "even if the disposition of the trial court was fundamentally wrong," "an appellate court may not address the issue" (cleaned up)). Because Four Seasons did not raise these issues, we cannot address them even if the Department's decision was unsound. *See Gibraltar Rock*, 286 A.3d at 724-25.

[6] Generally, we "must affirm [the agency's] adjudication unless we determine that: it violates the appellant's constitution[al] rights; it is not in accordance with law; it was reached in violation of applicable administrative procedure; or any fact necessary to the decision is not supported by substantial evidence." *U.S. Steel Corp. (USX Clairton Works) v. Unemployment Comp. Bd. of Rev.*, 858 A.2d 91, 99 (Pa. 2004); 2 Pa.C.S. § 704. We defined "substantial evidence," "as relevant evidence upon which a reasonable mind could base a conclusion. . . . The fact that a party may have produced witnesses who gave a different version of the events, or that the party might view the testimony differently than the [Department] is not grounds for reversal if substantial evidence supports the [Department's] findings." *Stage Rd.*, 34 A.3d at 885-86 (cleaned up). "Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the findings of fact are not supported by substantial evidence." *Id.* (citation omitted).

4

ownership with Forestry. *Id.* at 10-11. Relatedly, Four Seasons emphasizes that it did not assume any of Forestry's debts and only purchased some of Forestry's equipment. *Id.* at 11-14. Finally, Four Seasons asserts that the Department improperly weighed facts demonstrating a continuity of management and control. *Id.* at 14-18.

Briefly, under Section 301(d)(1)(B) of the Law, when a predecessor employer partially or wholly transfers its business or workforce to a "successor-in-interest," the Department must transfer any debts owed by that employer to the successor-in-interest if the Department finds one of two prongs. Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B).[7] The first prong is that the Department could find that the predecessor employer "was owned, controlled or managed by or owned, controlled or managed the successor-in-interest either directly or indirectly, by legally [enforceable] means or otherwise." *Id.* The second prong is that the Department could find that "both such [predecessor] employer and successor-in-interest were owned, controlled or managed either directly or indirectly, by legally

---

[7] The relevant statutory language follows: "with respect to any transfer by an employer subject to the contribution provisions of this act of its organization, trade, business or work force, in whole or in part, whether such transfer was by merger, consolidation, sale or transfer, descent or otherwise, the department shall transfer the experience record and reserve account balance (whether positive or negative) of such employer to its successor-in-interest if it finds" one of two prongs. Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B); *see also* Section 402.5(d) of the Law, added by the Act of July 1, 1985, P.L. 96, 43 P.S. § 802.5(d) (addressing benefits for workers of a successor to a seasonal employer). This Court has interpreted Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B), in resolving whether a successor-in-interest, *i.e.*, successor business, was owned or controlled by the predecessor employer, *i.e.*, predecessor business. *See, e.g.*, *Zotis Enters., Inc. v. Dep't of Lab. & Indus.*, 635 A.2d 698 (Pa. Cmwlth. 1993); *Reese Teleservices, Inc. v. Dep't of Lab. & Indus., Off. of Unemployment Comp. Tax Servs.*, 975 A.2d 600 (Pa. Cmwlth. 2009). There does not appear to be any other statutory basis permitting the Department to pursue a successor-in-interest for unpaid unemployment compensation taxes. *See also* Op. at 20 (explaining that the Department identified Four Seasons as a potential successor-in-interest to Forestry).

[enforceable] means or otherwise, by the same interest or interests." *Id.*; *see also* 34 Pa. Code § 63.1a.[8] Our jurisprudence apparently does not reflect when the Department began invoking the *de facto* merger doctrine to establish liability under Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B).[9]

Because Four Seasons did not challenge the Department's invocation of the *de facto* merger doctrine, we briefly state the doctrine. With "respect to successor liability in this Commonwealth, it is well-established that when one company sells or transfers all of its assets to another company, the purchasing or receiving company is not responsible for the debts and liabilities of the selling company simply because it acquired the seller's property." *Continental Ins. Co. v. Schneider, Inc.*, 873 A.2d 1286, 1291 (Pa. 2005) (cleaned up). "This general rule of non-liability can be overcome, however, if it is established that" "the asset sale amounted to a consolidation or a *de facto* merger." *Id.* (cleaned up); *Fizzano*, 42 A.3d at 954 (cleaned up).

A merger is the "uniting of two or more corporations by the transfer of property to one of them, which continues in existence, the others being merged into

---

[8] Section 63.1a of the Department's regulations was promulgated in 2011. Prior to 2011, because the Law was "silent as to the time duration of common ownership that is necessary to trigger a transfer[,] the Department . . . interpreted [Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B)] by looking at the situation of the parties at the time of transfer." *Armco, Inc. v. Pa. Dep't of Lab. & Indus.*, 713 A.2d 1208, 1209 (Pa. Cmwlth. 1998).

[9] *Cf.* Br. for Department at 9 n.2, *Youth Servs. Agency v. Dep't of Lab. & Indus., Off. of Unemployment Comp. Tax Servs.* (Pa. Cmwlth., No. 423 C.D. 2021, filed Mar. 7, 2022) (arguing that under Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B), "a business can be deemed a successor-in-interest" for unpaid unemployment compensation tax charges); *Armco*, 713 A.2d at 1209-10 (interpreting Section 301(d)(1)(B) of the Law, 43 P.S. § 781(d)(1)(B), in affirming the Department's holding that "there was common ownership or control between the two corporations" that actually merged). *Cf. also, e.g.*, *Stratigos v. Dep't of Lab. & Indus., Off. of Unemployment Comp. Tax Servs.*, 57 A.3d 217, 220-21 (Pa. Cmwlth. 2012) (noting account balance could be transferred upon establishing "a commonality of ownership, control, or management of the" business at issue).

it." *Fizzano*, 42 A.3d at 967 n.20 (citations omitted). "In a merger, one or more constituent corporations (each a disappearing corporation) merge into and become part of another constituent corporation that continues to exist after the merger has been consummated." *Id.* (citations omitted); *accord* 15 Pa.C.S. § 331.[10]

A *de facto* merger occurs when one or more of the following non-exclusive factors are demonstrated. *See Fizzano*, 42 A.3d at 962, 969. Those elements include "(1) continuity of ownership; (2) a cessation of ordinary business and dissolution of the predecessor as soon as practically and legally possible; (3) assumption by the successor of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the predecessor[;] and (4) a continuity of management, personnel, physical location, aspects, and general business operation." *Id.* at 962 (citation omitted). Our Supreme Court emphasized that these elements are guideposts and that a reviewing court should not construe these elements as a mechanical checklist. *Id.* at 969. The *Fizzano* Court also noted that "in a cause of action that invokes important public policy goals, the continuity of ownership prong may be relaxed." *Id.* at 967.

Instantly, we are constrained by the parties' arguments and the record, including the Department's credibility determinations and extensive findings of fact. *See Marlowe*, 812 A.2d at 487-88. For example, the Department correctly noted that under *Fizzano*, evidence of continuity of ownership may not be required, but nonetheless discussed evidence that in the Department's view established continuity of ownership. *See* Op. at 42-43. The Department highlighted the similarities

---

[10] Following *Fizzano*, in 2015, the General Assembly repealed 15 Pa.C.S. §§ 1921-1929, which addressed statutory merger, and "modernized" "the law on corporations" by enacting, *inter alia*, 15 Pa.C.S. §§ 331-336, which similarly authorizes mergers. *See* H.B. 2234, 198th Gen. Assemb. (Pa. 2013). Section 331(a)(1) authorizes mergers of, *inter alia*, two domestic entities "into a surviving association." *See* 15 Pa.C.S. § 331(a)(1).

between the entities' names and the Knechts' roles in both entities. *See, e.g.*, *id.* at 40-41, 43-44. In sum, the Department reviewed each of the four *Fizzano* factors, identified the testimony and evidence, rendered credibility determinations and findings of fact, and held that a *de facto* merger occurred. *Id.* at 35-47. After reviewing the record and the parties' briefs, and because we are constrained by the relevant law, we reluctantly agree with the Department's reasoning. *See Four Seasons Logging, LLC v. Dep't of Lab. & Indus., Off. of Unemployment Comp. Tax Servs.* (Office of Unemp. Comp. Tax. Servs., No. 18-R-0109-4, filed Mar. 15, 2022).

## IV. CONCLUSION

Initially, as a general matter, all decisions are to be construed against their facts. *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009). We are also limited by the issues raised by counsel. *See Gibraltar Rock*, 286 A.3d at 724-25. Because Four Seasons challenged *only* the evidence supporting the Department's application of the *de facto* merger doctrine, we may not address any other issues, "even if the disposition of the [agency] was fundamentally wrong." *See id.* Accordingly, constrained by well settled law, we affirm.

<br>

LORI A. DUMAS, Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Four Seasons Logging, LLC,     :
                  Petitioner   :
                                :
          v.                 :   No. 347 C.D. 2022
                                :
Department of Labor and Industry,  :
Office of Unemployment        :
Compensation Tax Services,      :
                  Respondent  :

# **O R D E R**

AND NOW, this 5th day of January, 2024, we AFFIRM the March 15, 2022 final decision and order by the Department of Labor and Industry, Office of Unemployment Compensation Tax Services, adverse to Four Seasons Logging, LLC.

_____
LORI A. DUMAS, Judge