**Pasquele E. PELUSO and Carol E. Peluso, husband and wife, Appellants**

v.

**Joseph W. KISTNER, Previous Sewage Enforcement Officer of Hemlock Township, and Hemlock Township of Columbia County, Pennsylvania.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2008.

Decided April 9, 2009.

Charles R. Rosamilia, Jr., Lock Haven, for appellants.

John A. Mihalik, Bloomsburg, for appellees.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge,[1] and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Pasquele and Carol Peluso appeal an order of the Court of Common Pleas of the 26th Judicial District, Columbia County Branch (trial court) that dismissed their complaint for damages. The Pelusos seek damages from Hemlock Township and its former employee, Joseph W. Kistner, for the reduction in the value of their property that was occasioned by the Township's refusal to reissue the Pelusos an on-lot sewage treatment permit. The trial court held that the Pelusos' complaint was barred by the doctrine of governmental immunity. The Pelusos contend that the trial court erred because their complaint sought damages under a contract, not a negligence theory.

The facts pled in the complaint provide the factual background to this controversy. The Pelusos own Lot No. 1 in the Pinebrook Homes Development located in Bloomsburg, Pennsylvania. On March 21, 1995, the Township's Sewage Enforcement Officer, Joseph W. Kistner, issued a per-

---

1. The decision in this case was reached before January 1, 2009, when Judge Friedman assumed the status of senior judge.

mit to allow construction of an on-lot sewage treatment system on Lot No. 1, located at the intersection of Pahl Road and Bridge Creek Road. The permit stated as follows:

> If construction or installation of an individual sewage system ... has not commenced within three years after the issuance of a permit for such system, the said permit shall expire, and a new permit shall be obtained prior to the commencement of said construction or installation.

Complaint, Exhibit A at 1. Relying upon this 1995 permit, the Pelusos purchased Lot No. 1 for the purpose of building a house thereon. When they sought to renew the permit several years after it had expired, the Pelusos were informed by the Township's current sewage enforcement officer that the permit could not be renewed because their lot was located on the flood plain. Without a sewage permit, the Pelusos cannot construct a house, which has caused the value of their lot to decline from $29,000 to $4,500.[2] The Pelusos seek damages from the Township and Mr. Kistner for the difference in value, *i.e.,* $24,500.

The Township and Kistner (collectively, Township) filed preliminary objections in the nature of a demurrer asserting immunity under the statute commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa.C.S. §§ 8541–8542. The trial court agreed with the Township that the Pelusos' claim for damages was barred by governmental im-

munity and dismissed their complaint. The Pelusos then appealed to this Court.[3]

On appeal, the Pelusos argue that the trial court erred because their complaint presented a type of contract claim to which the Tort Claims Act is irrelevant. Specifically, they assert that the complaint states a claim for damages under a theory of detrimental reliance, which may be asserted against a municipality or its employee notwithstanding governmental immunity. In response, the Township argues that the Pelusos' complaint sounds in negligence and points out that this Court has rejected attempts by plaintiffs to disguise a tort claim as a contract claim as a tactic for avoiding governmental immunity. The Township also argues that detrimental reliance is a type of defense but cannot sustain a separate cause of action.

We begin with a review of the principles of detrimental reliance, which this Court has explained "is another name for promissory estoppel." *Travers v. Cameron County School District,* 117 Pa. Cmwlth. 606, 544 A.2d 547, 550 (1988). Promissory estoppel enables a person to enforce a contract-like promise that would be otherwise unenforceable under contract law principles. 28 Am.Jur. 2d. *Estoppel and Waiver* § 57 (2008). For example, the doctrine allows a party to enforce a promise that is not supported by consideration. *Crouse v. Cyclops Industries,* 560 Pa. 394, 402, 745 A.2d 606, 610 (2000) (explaining that where "there is no enforceable agreement between the parties because the agreement is not supported by consider-

---

**2.** According to the Pelusos, Lot No. 1 has a value of $29,000 if it can be developed with construction of a home but a value of only $4,500 as a recreational lot. Complaint, ¶ 12.

**3.** In reviewing a trial court's decision on preliminary objections, we consider a pure question of law and as such our standard of review is plenary. *Hospital & Healthsystem Association of Pennsylvania v. Department of*

*Public Welfare,* 585 Pa. 106, 116 n. 12, 888 A.2d 601, 607 n. 12 (2005). In ruling on preliminary objections, a court must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced from them. *In re Opening Private Road ex rel. O'Reilly,* 954 A.2d 57, 61 n. 6 (Pa.Cmwlth.2008).

ation, the doctrine of promissory estoppel is invoked to avoid injustice by making enforceable a promise...."). Unlike equitable estoppel, which is wholly a defensive doctrine, promissory estoppel can sustain an action brought to remedy the injustice that results from a promise not kept.[4] This Court has explained as follows:

> Promissory estoppel is an outgrowth of equitable estoppel but, unlike equitable estoppel, *promissory estoppel may serve as an independent cause of action. Paul v. Lankenau Hospital*, 375 Pa.Super. 1, 543 A.2d 1148 (1988). Pennsylvania has long recognized promissory estoppel as a vehicle by which a promise may be enforced in order to remedy an injustice. *See Fried v. Fisher*, 328 Pa. 497, 196 A. 39 (1938).

*Travers*, 544 A.2d at 550 (emphasis added) (footnote omitted).

At the outset, therefore, the Township is wrong that detrimental reliance is an affirmative defense and not a cause of action.[5] The question, then, is whether the Pelusos have pled an action for detrimental reliance and whether their action is barred by governmental immunity.

■■ To establish promissory estoppel, the plaintiff must prove that: (1) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise. *Crouse*, 560 Pa. at 403, 745 A.2d at 610. These factors are strictly enforced to guard against the "loose application" of promissory estoppel. *Fried*, 328 Pa. at 503, 196 A. at 43. The change in the plaintiff's position must be substantial, and there is "no injustice in being deprived of a gratuitous benefit." *Stelmack v. Glen Alden Coal Co.*, 339 Pa. 410, 416, 14 A.2d 127, 130 (1940).

■ Here the Pelusos' complaint fails to state a claim of promissory estoppel. The Pelusos' complaint failed to contain a prerequisite element of promissory estoppel, a contract-like promise. The complaint alleges that the Pelusos relied upon a sewage permit issued to the prior owners of their lot that had lapsed before they made the purchase in question. A lapsed permit cannot be construed to convey a promise by the Township to the Pelusos that a permit will be reissued to them.[6]

---

4. It has been explained by our Supreme Court that equitable estoppel "does not create a cause of action at law...." *Department of Public Welfare v. School District of Philadelphia*, 49 Pa.Cmwlth. 316, 410 A.2d 1311, 1314 (1980).

5. For the contrary view, the Township relies upon *Gilius v. Board of Supervisors of Fairview Township*, 122 Pa.Cmwlth. 371, 552 A.2d 327 (1988). In *Gilius*, this Court stated, relying on PROSSER, *Law of Torts* (4th ed.1971), that equitable estoppel is recognized as a defense not a cause of action. *Id.* at 330. However, promissory estoppel is different from equitable estoppel. Further, in *Travers*, 544 A.2d at 550, it was clarified that promissory estoppel is not limited to a defensive use.

6. As a general rule, a sewage permit issued by a municipality illegally or under a mistake of fact does not confer a vested right in the permittee. *Turner v. Martz*, 42 Pa.Cmwlth. 328, 401 A.2d 585, 586 (1979). On the other hand, where the landowner has made a "large financial investment" based on the permit and had no way to determine that the permit was not valid, "then the owner does acquire a vested right in a municipal permit." *Id.* at 587. A vested right of this nature may bar the municipality or state from revoking the permit. *Department of Environmental Resources v. Flynn*, 21 Pa.Cmwlth. 264, 344 A.2d 720 (1975). The existence of a vested right does not mean, however, that an action for damages will be authorized. In any case, there can be no vested right in a permit that has lapsed, which is the situation in this case.

Indeed, the permit itself states that it may be revoked at any time for the reasons set forth in Section 7(b)(6) of the Pennsylvania Sewage Facilities Act, Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. § 750.7(b)(6).[7] Complaint, Exhibit A. In short, the Pelusos' complaint has not alleged the threshold requirement of a claim of promissory estoppel, *i.e.,* a promise by the Township on which the Pelusos reasonably relied to their detriment. Accordingly, the Pelusos' claim for promissory estoppel fails as a matter of law.[8]

For these reasons, we affirm the decision of the trial court, albeit on other grounds.

Judge PELLEGRINI concurs in the result only.

### ORDER

AND NOW, this 9th day of April, 2009, the order of the Court of Common Pleas of the 26th Judicial District, Columbia County Branch, is AFFIRMED on other grounds.

---

**7.** Section 7(b)(6) provides in relevant part:

> If the local agency determines that: (i) any change has occurred in the physical conditions of any lands which will materially affect the operation of the community sewage system or individual sewage system covered by any permit issued by the local agency under section 7 of this act, or (ii) one or more tests material to the issuance of the permit has not been properly conducted, or (iii) information material to the issuance of the permit has been falsified, or (iv) the original decision of the local agency otherwise failed to conform to the provisions of this act or the rules and regulations of the department, or (v) the permittee has violated the rules and regulations of the department under which the permit was issued, the permit shall be revoked. Such action shall be taken after notice and opportunity for hearing has been given to the permittee.
>
> 35 P.S. § 750.7(b)(6).

**8.** The trial court relied upon *Schreck v. North Codorus Township,* 126 Pa.Cmwlth. 407, 559 A.2d 1018 (1989), to hold that the Pelusos' complaint was barred by sovereign immunity. In *Schreck,* property owners brought an action against the township and its sewage enforcement officer for damages caused to their property by malfunctioning sewage systems. The complaint alleged that the sewage systems had been negligently installed because of permits improperly issued by North Codorus Township. The complaint alleged that the township had failed to perform the necessary soil tests; failed to analyze soil conditions; allowed construction of facilities on land unsuitable for those systems; and improperly permitted the systems. The township responded that it performed duties imposed upon it by statute, not by "contract" with the plaintiffs. *Id.* at 1022 n. 5. This Court agreed and held that a township's negligent completion of its governmental duties was not actionable in tort or in contract.

Here, by contrast, there are no allegations that the Township was negligent in performing its responsibilities when it issued the permit to the prior owners of the Pelusos' lot. *Schreck* is inapposite.